UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INFINITY FLUIDS, CORP.,<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL DYNAMICS LAND<br>SYSTEMS, INC.,<br>　　　　　　　Defendant. | )<br>)<br>)<br>)　CIVIL ACTION<br>)　NO. 14-40089-TSH<br>)<br>)<br>)<br>) |

**ORDER**

**September 24, 2015**

Hennessy, M.J.

　　Pursuant to 28 U.S.C. § 636(b)(1)(A), by order of reference (Docket #69), this matter was referred to me for a ruling on Plaintiff Infinity Fluids, Corp.'s ("Infinity") Motion to Enforce Court's Discovery Orders and Motion for Sanctions (Docket #68).  Defendant General Dynamics Land Systems, Inc. ("GDLS") filed an Opposition (Docket #71), followed by Infinity's Reply (Docket #76), and GDLS's Sur-Reply (Docket #83).[1]  In consideration of the foregoing submissions and for the reasons that follow, Infinity's motion is denied in its entirety.

　　Background and Procedural History[2]

　　Infinity's discovery motion—its third filed in the span of under nine months—relates to two orders previously issued by this court.  On December 17, 2014, pursuant to the first such motion, I ordered GDLS to provide to Infinity a supplementary document production, which was to include certain information pertaining to the GDLS Trade Study and GDLS Heating

---

[1] The court granted GDLS leave to file a Sur-Reply on September 4, 2015.  (Docket #81).

[2] Familiarity with the facts underlying this matter is assumed and information not relevant to the instant motion will not be recited here.

Application, to the express exclusion of information concerning the Expeditionary Fighting Vehicle project generally. (Docket #36 at pp. 1-2). Infinity's second motion, which sought enforcement of the December 17, 2014 order (see Docket #40), was granted by order dated May 1, 2015, in which I ordered further production by GDLS in accordance with the December 17, 2014 order. (Docket #59). Infinity now seeks enforcement of the two prior orders, as well as sanctions against GDLS for its purported noncompliance with the court's prior directives.

Despite Infinity and GDLS's somewhat sprawling arguments contained, respectively, in the original motion papers and Opposition, the scope of this dispute appears to have been narrowed by the fact that, concurrent with the filing of its Opposition on August 3, 2015, GDLS furnished to Infinity a supplemental document production. (See Docket #76 at p. 2). To that end, Infinity's Reply expressly identifies four categories of substantive relief sought: (1) backup accounting data; (2) salary and hours billed for certain GDLS employees; (3) incentive fee documents; and (4) amendment or supplementation to the affidavit of GDLS's senior counsel Michael Little ("Little Affidavit"). The Reply also requests sanctions in the form of attorneys' fees associated with the instant motion. The court will now address each item *seriatim*.

Backup Accounting Data

Infinity contends that GDLS has failed to provide it with information necessary to Infinity's understanding of accounting data concerning the GDLS Heating Application and Trade Studies. Accordingly, Infinity now requests (1) accounting information relating to work that was performed pursuant to Contract Line Item Number ("CLIN") 0007[3] (as opposed to the majority of GDLS's work that fell under the umbrella of CLIN 0001); and (2) subCLINS pertaining to the

---

[3] The CLIN 0007 work post-dated the cancellation of the underlying contract with the U.S. Marines Corps. ("SDD-2 Contract") and was added to the SDD-2 Contract to account for the contract's close-out efforts. (Docket # 71-2 ¶ 5).

Heating Application and Trade Studies, which, Infinity contends, will allow it to request specific backup incentive fee documents and accounting data. (See Docket #68 at p. 8).

The first category requires some brief background. GDLS asserts that after providing the Little Affidavit,[4] which states that "[a]ll work performed and costs incurred related to the Heating Application and the Trade Study were recorded and billed to the U.S. Marines under CLIN 0001," (Docket #62-1 ¶ 6), GDLS identified a charge code (REPL217401) relevant to the Heating Application and Trade Study that was billed under CLIN 0007.[5] Accordingly, on June 10, 2015 GDLS provided a Work Authorization Document pertaining to Charge Code REPL217401. (Docket #71-1 ¶ 3). Similarly, its spreadsheet "containing all hours billed by all GDLS employees and contractors from June 2008 to December 2011 on all charge codes involving work performed on the Heating Application or Trade Study" also incorporates the REPL217401Charge Code. (Id. ¶ 4). Further, GDLS has submitted the affidavit of its Engineering Manager Brian Radlick ("Radlick Affidavit"), which provides that "[n]o proposal, budget, or approval was created by GDLS or the U.S. Marines regarding GDLS's close-out efforts specifically related to the Heating Application or Trade Study under CLIN 0007." (Docket # 71-2 ¶ 5).

Concerning Infinity's request for subCLINs, the Little Affidavit makes clear that all costs under the SDD-2 Contract were billed at the CLIN (as opposed to subCLIN) level. (Docket # 62-1 ¶¶ 9-10).[6] The affidavit of GDLS's Manager of Revenue Management Mary Vrbensky

---

[4] The Little Affidavit is dated May 14, 2015.

[5] GDLS has explained that this charge code was inadvertently omitted from its initial production. (See Docket #71-2 ¶ 4). Notwithstanding Infinity's not entirely baseless characterization of this omission as "disingenuous" and constituting "lie[s]" and "false statements," (Docket #76 at pp. 5-6), the court accepts GDLS's explanation of inadvertent omission.

[6] The Affidavit further provides that the USMC did not assign a unique CLIN to costs incurred in relation to the Heating Application or Trade Study. (Docket #62-1 ¶ 12).

3

("Vrbensky Affidavit") says the same, and elucidates that the subCLINS have no bearing on the scope of work performed by GDLS, but instead pertain to the sources of the U.S. Government's funding for work performed pursuant to the SDD-2 Contract. (Docket #71-3 ¶¶ 3-6). Ms. Vrbensky concludes that the subCLINS "provide no further information to Infinity regarding revenues, costs, or profits associated with the . . . 'Heating Application' and 'Trade Study.'" (Id. at ¶ 7).

In light of the above, I find that GDLS has furnished to Infinity all information it possesses relevant to Infinity's calculation of damages arising from the SDD-2 Contract, and, per the court's May 1, 2015 order, has satisfactorily explained the non-existence of any additional pertinent information. Presumably frustrated with the reality that the documents responsive to its requests simply do not contain the information it seeks, Infinity is fishing for information that is unlikely to reveal anything "relevant to [Infinity's] claim . . . and [ ] proportional to the needs of the case." See Fed. R. Civ. P. 26. (2015 Amendment).[7] The documentation now being sought either (1) seeks budgetary information concerning work for which no budget was ever created (*i.e.* CLIN 0007); or (2) in the case of the subCLINs, will do nothing to advance the goal set forth in Infinity's motion—namely, to further its "understanding of the accounting data . . . related to the GDLS Heating Application" and Trade Study. (See Docket # 68 at p. 4). Accordingly, the portion of Infinity's motion that seeks backup accounting data is denied.

Salary and Billing Information for GDLS Employees

The present dispute over salary and billing data touches upon such information pertaining to (1) GDLS's non-engineering personnel; and (2) several specifically-named GDLS employees.

---

[7] The clause pertaining to proportionality will become effective December 1, 2015 absent contrary Congressional activity.

As to the former, GDLS has provided a spreadsheet "containing all hours billed by *all GDLS employees and contractors* from June 2008 to December 2011 on all charge codes involving work performed on the Heating Application or Trade Study," (Docket #71-1 ¶ 4) (emphasis added), as well as documents supporting the calculation of labor rates. (Docket #83-1 ¶ 6).

Infinity nonetheless contends that "GDLS refuses to provide billing information for all employees/contract workers that worked on the Heating Application and related Trade Studies." (Docket #68 at p. 11). It refers to an email exchange in which GDLS refused to provide a "finalized listing of employees, their time and descriptions of job codes for accounting, marketing, administrative, purchasing, etc. that referenced or reported working on ECS/heating application job codes." (Docket #68-3 at p. 3). The crux of Infinity's justification for its pursuit of these materials is that, without them, Infinity is "without information to understand if such non-engineering employees billed to the relevant charge codes." (Docket #76 at p. 3).

Initially, although GDLS has not provided an affidavit explicitly stating that the only GDLS employees who billed for the EFV project were engineers, the record suggests this to be the case, (see Docket #62-1 ¶¶ 7-8; Docket # 68-7 ¶ 10; Docket #71-2 ¶ 2), thus casting doubt on the propriety of this request in the first instance. Further, the Radlick Affidavit provides that the six charge codes for which GDLS provided documentation encompass all time billed on the Heating Application and Trade Study, and that GDLS has produced *all* Work Authorization Directives and labor billed pursuant to these charge codes during the relevant period. (Docket #71-2 ¶ 7). Infinity has failed to carry its burden to demonstrate the necessity for any additional materials, and accordingly, this request is denied.

Infinity also references by name thirteen individuals whom it asserts it has identified as part of the Trade Study Assessment and for whom it does not have billing or salary information.

(Docket #76 at p. 3). Nowhere, however, does Infinity indicate the basis for its belief that these individuals were part of the "Trade Study Team," stating only that it "has located several other individuals who were part of the 2010 Heater Concept Trade Study Assessment for whom GDLS has provided no information regarding the hours billed or salary earned." (Id.). Without any support for this assertion, Infinity has failed to justify the production of billing and salary information for these purported Trade Study Team members. The court is hesitant, however, to preclude such information if these individuals did indeed work on the Trade Study Assessment. Accordingly, this request is denied without prejudice and with leave for Infinity to provide the basis for its belief that these individuals were part of the Trade Study Assessment.

Incentive Fee Documents

Infinity's Reply provides that it is seeking "incentive fee documents for all periods of the SDD-2 contract." (Docket #76 at p. 8). It first asserts that GDLS's production in this regard is "selective" and "piecemeal" (id. at pp. 3-4), but fails to provide context or any substantive basis to support these characterizations. Infinity further contends that the production does not cover all periods of the SDD-2 Contract. (Id. at p. 4). GDLS counters that although the SDD-2 Contract listed six incentive fee periods, because the contract was canceled prior to completion, the last two periods were never reached; to this end, GDLS asserts that it has produced all incentive fee documents relevant to the periods that actually occurred. (Docket #83 at p. 4). The court finds this explanation satisfactory, and accordingly, Infinity's request for further production of incentive fee documents is denied.

Amendment to the Little Affidavit

This court's May 1, 2015 order directed GDLS to serve an affidavit "outlining which information or documents [sought in several of Infinity's document requests] could not be

produced, or do not exist, and why." (Docket #59 at p. 3). As noted, GDLS provided in response the Little Affidavit, which later was supplemented by the Radlick and Vrbensky Affidavits (Docket #71-2, 71-3). Infinity argues on Reply[8] that the Little Affidavit and its supplements do not satisfy the court's directive and should be further amended or supplemented. Much of Infinity's argument consists of attacks on GDLS's credibility, premised upon the timing and content of the Radlick affidavit, an argument by which, as indicated above, the court is not persuaded. See footnote 5, supra. Infinity offers almost nothing by way of the Little and Radlick Affidavits' substantive deficiencies. Indeed, its only statement to this effect is that the Little Affidavit does not mention destroyed documents, a category that the court never ordered GDLS to address.

The court is satisfied that the Little and Radlick Affidavits satisfy the court's directive that GDLS identify information that does not exist or cannot be produced, and explain why this is the case; to borrow a phrase from Infinity's brief, to "attest to the completeness of the information provided." (Docket #68 at p. 14). Most salient is the following statement by Mr. Radlick: "GDLS has now identified all six (6) Charge Codes . . . under which labor related to the Heating Application and Trade Study was billed, and has produced all WADs generated and labor billed pursuant to these Charge Codes during the relevant period." (Docket #71-2 ¶ 7). Because Infinity has not presented any credible argument to the contrary, its request for further amendment or supplementation to the Little Affidavit is denied.

Attorneys' Fees

After initially proposing various forms of sanctions for GDLS's alleged failure to provide discovery, Infinity in its Reply seeks attorneys' fees in connection with the instant motion.

---

[8] Because the Radlick and Vrbensky affidavits postdate Infinity's motion but predate its Reply, the court's analysis will center on the arguments contained in the latter.

Ultimately, the exact nature of the sanction being sought is of no moment, because the court finds any such relief to be unwarranted. Although Infinity characterizes GDLS's actions as reflective of an attempt to flout its discovery obligations, the record simply fails to persuade the court that this is the case. As discussed above, GDLS's initial failure to incorporate into its discovery responses Charge Code REPL217401 may be attributed to reasonable error. And as GDLS points out, the mere fact that this code was identified *by Infinity* as potentially relevant does not necessarily make it so;[9] GDLS acted within its rights by conducting its own analysis of the relevance of REPL217401, and providing a supplemental production as well as the Radlick Affidavit upon a determination that it was.

Infinity has not provided any authority supporting the imposition of a sanction here. The sole case cited in support, Momenta Pharm., Inc. v. Amphastar Pharm., Inc., No. 11 Civ. 11681, 2014 WL 257394 (D. Mass. Jan. 22, 2014), involved a blatant violation of a straightforward court order, upholding a sanctions award where a party (1) "did not produce [ordered] documents within the time prescribed, in violation of the court order, even though such [ ] records did, in fact, exist"; (2) failed to comply with a "specific[ ] order[ ] . . . to produce in unredacted form documents that had previously been produced in redacted form"; and (3) produced certain materials only in redacted form, in direct contravention of an order to provide both redacted and unredacted versions. See id. at *3-4. This has no bearing on the instant dispute, which is based on some combination of varying interpretations of a decidedly less concrete court order than that in Momenta, and Infinity's dissatisfaction with GDLS's production of information as it became available. Accordingly, Infinity's motion for sanctions is denied.

---

[9] Indeed, the Radlick Affidavit states that eleven Charge Codes which Infinity similarly identified as relevant proved not to incorporate work performed on either the Heating Application or Trade Study. (Docket #71-2 ¶ 6).

**CONCLUSION**

For the foregoing reasons, Infinity's Motion to Enforce Court's Discovery Orders and Motion for Sanctions (Docket #68) is denied in its entirety. As indicated, the portion of the motion that seeks information regarding the individuals specifically named in Infinity's Reply (Docket #76 at p. 3) is denied without prejudice. Infinity is directed to submit within fourteen days the basis for its belief that the named individuals were part of the 2010 Heater Concept Trade Study Assessment.

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE